ORIGINAL

ECF

FILED
JUN 2 0 2003
U.S. COURT OF
FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**AMEC CONSTRUCTION MANAGEMENT, INC.,**
**f/k/a Morse Diesel International, Inc.**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

**Case No.** 03-1537C

# COMPLAINT

Plaintiff AMEC Construction Management, Inc. ("ACMI"), f/k/a Morse Diesel International, Inc., by its undersigned attorneys, respectfully brings this Complaint and alleges as follows:

## Introduction

1. ACMI brings this action on appeal from a June 24, 2002 final decision of a contracting officer at the U.S. General Services Administration ("GSA"), denying ACMI's claim to establish a total contract price as a first step to ACMI's proof of its convenience termination costs under GSA Contract No. GSA06P95GZC0501 for construction of Phase II of the Thomas F. Eagleton U.S. Courthouse, St. Louis, Missouri (the "Phase II Contract").

2. On June 16, 1999, GSA terminated the Phase II Contract for default. ACMI promptly appealed to this Court from the termination, seeking to have the termination for default converted to a termination for convenience of the government. That action, which is pending in this Court, is docketed as Case No. 99-529C.

3. On August 30, 2001, ACMI submitted a claim, denominated "Request for Equitable Adjustment Part I," for the purpose of establishing a total contract price for the Phase II contract. This is not a claim for payment of money by GSA. Rather, it is an

intermediate, but necessary, step to the ultimate establishment of termination convenience costs by demonstrating that ACMI would not have sustained a loss in contract performance had that performance continued to contract completion. *See* FAR 52.249-2(g)(1)(iii).

4. ACMI anticipates submitting a claim for termination convenience costs, including revisions to the total contract price calculation as set forth in paragraphs 17 and 18 below, to the contracting officer for final decision. In the event that the claim is denied, ACMI will bring an appeal to this Court from that denial and seek consolidation of that claim for termination convenience costs with this claim for the purpose of establishing the total contract price.

**Jurisdiction**

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1491 and 41 U.S.C. § 609.

**Parties**

6. ACMI is incorporated under the laws of the State of Delaware and is engaged primarily in the business of construction management and general contracting work on public and private projects. ACMI's headquarters is located at 1633 Broadway, 24th Floor, New York, New York 10019-6708.

7. In all its dealings regarding the Phase II Contract, the United States acted through the GSA.

**Factual Background**

8. On September 28, 1995, the GSA awarded Contract No. GSA06P95GZC0501 – the Phase II Contract – to ACMI for $165,102,792. Specifically, the Phase II Contract covered the completion of the Courthouse over and around the elevator core and foundation, previously constructed as Phase I.

9. During the course of Phase II Contract performance, GSA issued hundreds of change orders, as well as untimely and defective drawings. These actions – and others – had the effect of substantially delaying Phase II Contract completion. As of June 16, 1999, the date that GSA terminated the contract for default on the basis that ACMI was allegedly not progressing

the work in accordance with the contract schedule, ACMI was entitled to an excusable, compensable time extension that would carry the contract completion date well beyond the date of the termination.

10. ACMI appealed the default termination to this Court on July 29, 1999. That appeal has been docketed as Case No. 99-529C and is currently pending in this Court.

11. On August 30, 2001, ACMI submitted a Request for Equitable Adjustment Part I (hereafter "REA Part I") to the GSA contracting officer. This was not a claim for payment of money by GSA to ACMI . Rather, it was a claim to establish a total contract price as an intermediate step to a later claim for termination convenience costs.

12. The REA Part I incorporated a delay analysis prepared by ACMI's construction schedule consultant. The analysis demonstrated that GSA had delayed contract performance by 365 days as of June 16, 1999, the date of the default termination, and had acted in such a way that there would have been 70 additional days of compensable delay, had ACMI been permitted to complete the project. ACMI is entitled to that time extension.

13. The REA Part I calculated a new total contract price, taking into account the then-current contract price, additional amounts owed to ACMI as of the date of termination, and the projected value of the work still remaining at the time of termination.

14. Because the claim was to establish a total contract price, not to seek the payment of money from GSA, REA Part I included, as an initial component, claims already submitted to the contracting officer (three of which are currently before this Court as Case Nos. 99-529C, 99-530C, and 00-531C). With regard to those "existing claims," REA Part I states that they "are not being resubmitted for further ruling, but to establish the overall contract amount."

15. REA Part I also sets out the time impact costs of GSA's actions as of the June 16, 1999 termination date, and projects the additional time impact costs that would have been incurred in order to complete the remaining work.

16. REA Part I then discusses certain items of "unresolved extra work" that were not reflected in the contract price at the time of termination.

17. Since the time of submission to the contracting officer of this claim for the purpose of establishing the total contract price, ACMI has determined through settlement discussions with its subcontractors that the following items are no longer part of the total contract cost:

| | |
|---|---|
| Blocking of courtrooms | $ 277,975 |
| Unresolved directed extra work | $5,155,834 |

18. There are additional items to be included in the total contract price relating to subcontractor delay and impact claims, and to additional ACMI costs. These additions to the total contract price will be the subject of a separate submission to the contracting officer in the near future.

19. On June 24, 2002, the GSA contracting officer denied ACMI's REA Part I in its entirety. The overarching reason for the denial was the contracting officer's failure to understand the "relevance" of the request to establish a final contract price and the mistaken belief that ACMI had submitted an improper claim for payment of money by GSA. Other, more specific reasons for the denial are equally without merit.

**Count I**

**<u>Termination for Convenience Clause</u>**

20. ACMI incorporates by reference as if fully set forth herein the allegations of paragraphs of 1-19 above.

21. Because GSA's termination of the Phase II Contract was illegal, the termination is converted by operation of law into a termination for convenience of the government. The illegality of the default termination is the subject of Case No. 99-529C.

22. The Phase II Contract contained the clause at FAR 52.249-2 "Termination for Convenience of the Government" (Fixed-Price) (Alternate I). That clause establishes the procedures for calculating the convenience termination costs owed to ACMI.

23. In calculating those convenience termination costs, the clause provides for a calculation of total contract price in order to determine whether ACMI is due a profit on its costs or, rather, a reduced recovery if ACMI's total costs of performance would have exceeded the contract price. FAR 52.249-2(g)(1)(iii) states that a contractor shall receive:

> (iii) a sum, as profit on subdivision (g)(1)(i) of this clause, determined by the Contracting Officer under 49.202 of the Federal Acquisition Regulation, in effect on the date of this contract, to be fair and reasonable; however, if it appears that the Contractor would have sustained a loss on the entire contract had it been completed, the Contracting Officer shall allow no profit under this subdivision (g)(1)(iii) and shall reduce the settlement to reflect the indicated rate of loss.

24. ACMI's claim to establish the total contract price is based on this FAR provision. There is no legal requirement that the determination of the total contract price be preceded by a Court decision to convert the termination for default to a termination for convenience of the government.

25. The failure of the contracting officer to determine the amount of the total contract price is a violation of FAR 52.249-2.

26. In addition, for those specific items that the contracting officer considered and denied on the merits, that denial was arbitrary, capricious, and not in accordance with applicable law, and therefore violated FAR 52.249-2.

## Court II

## <u>Breach of Contract</u>

27. ACMI incorporates by reference as if fully set forth herein the allegations of paragraphs of 1-26 above.

28. In an earlier claim to the contracting officer, now on appeal in this Court in Docket No. 99-529C, ACMI has challenged the legality of the default termination of the Phase II contract.

29. Having made this challenge, ACMI has the right to assert a claim for determination of the total contract price, and GSA has the contractual obligation to decide that claim in accordance with the relevant facts and applicable legal principles.

30. By denying ACMI's claim to determine the total contract price, GSA has breached that contractual obligation.

31. In addition, for those specific claim items that the contracting officer considered and denied on the merits, that denial was arbitrary, capricious, and not in accordance with applicable law, and therefore breached GSA's contract obligations.

WHEREFORE, ACMI requests that the Court:

a. Determine the cost impacts of GSA's actions on the Phase II Contract price;

b. Adjust the contract terms by determining the appropriate contract time extension and establishing a total contract price consistent with the conversion of the default termination to a termination for convenience of the government; and

c. Award such other relief as the Court deems just and proper.

Dated: June 20, 2003

Respectfully submitted,

Craig S. King by RJ Webber

Craig S. King
Arent Fox Kintner Plotkin & Kahn, PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
202-857-8938 Fax: 202-857-6395

Attorney of Record

Of Counsel:

Richard J. Webber
William W. Goodrich II
Arent Fox Kintner Plotkin & Kahn, PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
202-857-6254 Fax: 202-857-6395